### CARRICARTE *v.* BLANCO.

### SAME *v.* DE LASTRES.

*(Supreme Court, General Term, Second Department.    June 25, 1888.)*

PRINCIPAL AND AGENT—COMPENSATION OF AGENT—RENUNCIATION OF FIXED AMOUNT.
    A person acting under a power of attorney, having revoked a previous renunciation of fixed payment or compensation for his services, is placed in the same position he had occupied before renunciation in respect to compensation for the services he may perform.

Appeal from judgment on report of J. L. BISHOP, referee.

Two actions by Josie de Carricarte to recover upon a *quantum meruit* for services rendered by him to Josie Garcia Blanco and Maria Josefa Garcia Blanco de Lastres.    Judgment for $3,568 was entered upon the report of a referee in favor of plaintiff against each defendant.    Defendants appeal.

*Arnold & Greene*, for appellants.    *Olcott, Mestre & Gonzalez*, for respondent.

DYKMAN, J.    These two actions were tried together, and the facts are substantially the same in both.    They were brought to recover for services rendered to the defendants in respect to their interests as heirs to a large estate left by Bartolomer Blanco, who died in New York in August, 1874, and in attending to the partition of the estate between the different heirs, including the defendants, which services began in January, 1876, and ended in December, 1879.    The defendants were the children of Maria Antonia Blanco, a sister of the deceased.    There were several other heirs, all of whom were residents of Spain, and lived near the residence of the plaintiff, at Coruna.    The plaintiff is a merchant, a man of property and experience, and the defendants most of them seem to have been the reverse.    The deceased left a large amount of real estate and personal property in New York and Brooklyn, valued at $2,854,306, leaving a last will and testament, which was proved as a will of personal property only.    Upon the death of the deceased a friend of his informed the heirs of the death, and they met at the office of the plaintiff at Coruna, and determined to proceed to New York, and requested the plaintiff to accompany them; and in September, 1874, the heirs or their representatives, with the plaintiff, came to the city of New York, and remained until February, 1875.    During that time the will of the deceased was admitted to probate, and the plaintiff returned to Spain with the heirs.    When they left,

about $600,000 of the funds of the estate were on deposit with the Commercial Warehouse Company, which failed in May following. When intelligence of such failure reached the heirs, they again requested the plaintiff to return to New York, and he agreed to do so, and in November left Spain for New York, and met here several of the heirs, and among others the defendant Josie Garcia Blanco, who also represented the other defendant in the other action, who is a sister. In January, 1876, the heirs all met in New York city with the plaintiff, and it was then decided to have the real estate divided between the heirs, and the plaintiff was requested to take charge of that work. The property consisted of 25 houses and 13 stores in New York, and 67 houses in Brooklyn, valued in all at $1,462,300, in different pieces, which were of unequal value. The plaintiff performed this work to the satisfaction of the parties concerned, and upon his allotment the partition was made. The plaintiff also received from the defendant Blanco a power of attorney, on his departure for Spain, and a substituted power of attorney for Mrs. Lastres, the other defendant. The plaintiff thus was placed in charge of the general interests of the defendant in the whole estate. His services were quite arduous. He acted as general adviser; made himself familiar with the property, its condition and values; he attended to rescuing as much as possible of the claims against the Commercial Warehouse Company, and succeeded in saving $168,000, and some shares of stock besides. Both these actions were tried together before a referee, who reported in favor of the plaintiff in each case; and the referee, besides his findings, wrote an opinion of considerable length, in which he collated, with great fairness, the facts, and showed clearly that the plaintiff was entitled to recover compensation for his services from the defendants. Upon the trial of these actions the defendants seem to place strong reliance upon a renunciation which the plaintiff had made of fixed payment or compensation for his services; but that renunciation was subsequently revoked, and the parties were then placed in the position they had previously occupied in respect to compensation of plaintiff for the services that he might perform. The defendants also object to the amounts allowed in these actions by the referee, but an examination of the testimony satisfies us that the amounts awarded by the referee to the plaintiff are by no means extravagant; but in view of the interest placed in his charge, and the responsibility which he assumed, and the satisfactory manner in which he discharged all his duties, which were quite arduous, we have reached the conclusion that the amount of the reports were just, and that the judgments in both cases should therefore be affirmed, with costs.